UNITED STATES of America,
Appellee,

v.

Michael Lee CARTER, Defendant–
Appellant.

Docket No. 99–1132

United States Court of Appeals,
Second Circuit.

Argued: Dec. 7, 1999.

Decided: Feb. 16, 2000.

William G. Clauss, Federal Public Defender, Western District of New York, Rochester, N.Y. (MaryBeth Covert, of counsel), for Defendant–Appellant.

Richard A. Resnick, Assistant United States Attorney, Western District of New York, Rochester, N.Y. (Denise E. O'Donnell, United States Attorney, of counsel), for Appellee.

Before WINTER, Chief Judge, and OAKES and SOTOMAYOR, Circuit Judges.

OAKES, Senior Circuit Judge:

Defendant Michael Lee Carter appeals from his sentence of 60 months' imprisonment imposed by the United States District Court for the Western District of New York (Michael A. Telesca, *Judge*) following his plea of guilty to one count of illegal dealing in firearms in violation of 18 U.S.C. § 922(a)(1)(A). The district court calculated Carter's criminal history category to be III and departed upward pursuant to U.S. Sentencing Guidelines Manual § 5K2.0 (1998) (hereinafter "U.S.S.G."). On appeal, Carter argues that the district court misapplied U.S.S.G. § 4A1.2(c), which excludes certain minor offenses and those "similar" to them from a defendant's criminal history. Carter also argues that the district court failed to provide him with reasonable notice of the court's intention to depart upward and, in so doing, deprived Carter of his due process right to a meaningful opportunity to be heard prior to sentencing. Finally, Carter argues that the grounds upon which the district court based its upward departure were improper.

We agree that the district court used an incorrect legal standard in determining whether Carter's prior offenses should have been counted. We affirm, however, the district court's upward departure and remand for resentencing consistent with this opinion.

## BACKGROUND

Carter was arrested on February 15, 1998, in Rochester, New York after transporting thirteen firearms by automobile from Alabama, where he resided. Eleven of these firearms had been purchased in Alabama and were contained in their original boxes in the back of Carter's vehicle. Another firearm was seized from Carter's pocket, and the remaining firearm was seized from a purse belonging to his wife, who was traveling with him at the time of his arrest.

In a criminal complaint filed on February 14, 1998, Carter was charged with various firearms violations. On August 5, 1998, Carter waived indictment and pleaded guilty to a one-count felony superseding information charging that Carter engaged in the business of dealing in firearms without a license by willfully shipping and transporting firearms in violation of 18 U.S.C. § 922(a)(1)(A). In Carter's written plea agreement with the Government, he specifically agreed that the relevant conduct included thirty-nine handguns purchased on several occasions in Alabama between June 1997 and February 1998.[1] The Government and Carter also agreed that Carter's base level sentence should be increased by five offense levels based on the number of guns involved.

A violation of 18 U.S.C. § 922(a)(1)(A) results in a maximum possible sentence of a term of imprisonment of five years, a fine of $250,000, or both, and has a base offense level of twelve. The district court calculated Carter's total offense level to be 20. This calculation takes into account an agreed-upon incremental increase pursuant to U.S.S.G. § 2K2.1(b)(1) based on the number of guns involved.[2] Carter does not contest the district court's determination of his total offense level. Carter, however, does challenge the determination of his criminal history category. The court calculated his criminal history category to be III, resulting in an imprisonment range of 41 to 51 months.[3] See U.S.S.G. Chapter 5, Part A. In arriving at Carter's criminal history category, the district court counted a New York state harassment conviction sustained by Carter in 1992. Carter objected to the district court's inclusion of this harassment conviction in its calculation.

The district court departed upward from the imprisonment range based on Carter's "repeated conduct on separate occasions in knowingly purchasing the guns for illegal redistribution and sale in Rochester adding to the threat of increased violence in high crime areas." The district court imposed the maximum possible statutory sentence of five years' (60 months') imprisonment and recommended that the sentence be served consecutively to a previously imposed state sentence.

The district court notified Carter for the first time of its intention to depart upward on the day of the sentencing hearing. Carter objected, arguing that the district court had failed to give him sufficient notice of its intention to depart. The district court proceeded, over Carter's objection, to announce its sentence including the upward departure based on the repetitive nature of Carter's conduct. Carter objected again and stated that the repeated pur-

---

1. The thirty-nine handguns included eleven in original boxes found in Carter's vehicle at the time of his arrest and twenty-eight others Carter agreed he had sold in Alabama at various prior times.

2. This calculation also included a two-level upward adjustment pursuant to U.S.S.G. § 2K2.1(b)(4) because Carter altered the serial number on several guns; a four-level upward departure pursuant to U.S.S.G. § 2K2.1(b)(5) because Carter transferred the guns with knowledge they would be used in connection with a felony; and a three-level downward adjustment pursuant to U.S.S.G. §§ 3E1.1(a) and (b) for Carter's acceptance of responsibility.

3. The district court's determination was based on the probation department's calculation contained in the Presentence Investigation Report. Carter objected to the criminal history category calculation contained in the report.

chases were fully incorporated into the offense conduct. Thereafter, the district court withheld rendering final imposition of the sentence until after it had entertained written submissions in opposition to the upward departure. Defense counsel filed a motion to correct the sentence on February 17, 1999, arguing that the district court failed to give Carter adequate notice and a meaningful opportunity to be heard in opposition to the upward departure. Defense counsel also argued that the departure was substantively improper because the number of guns was already accounted for in Carter's sentence.

On February 19, 1999, the court held oral argument regarding Carter's motion to correct the sentence, which included a challenge to an upward departure. The court subsequently denied Carter's motion for correction of the sentence and imposed its sentence of February 16, 1999.

## DISCUSSION

### I. Section 5K2.0 Departure

Carter argues that the district court violated his right to due process because it failed to give him adequate notice of its intention to grant an upward departure of nine months pursuant to U.S.S.G. § 5K2.0. Carter also argues that the district court's departure was an impermissible instance of double counting under the Guidelines. Although we agree with Carter that the notice provided was inadequate, we find it was cured in this case. Furthermore, the district court was within its discretion to depart upward based on the repeated and dangerous nature of Carter's conduct.

■ We review a district court's upward departure for an abuse of discretion. *See United States v. Delmarle*, 99 F.3d 80, 84 (2d Cir.1996). It is established that Federal Rule of Criminal Procedure 32 requires that a sentencing judge contemplating an upward departure should give reasonable notice to the defendant, and inform him of the factors the judge is planning to rely upon and why these fac-

tors warrant a departure. *See Burns v. United States*, 501 U.S. 129, 138–39, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). We have held that "[a]dequate notice and the opportunity to contest an upward departure ... are indispensable to sentencing uniformity and fairness." *United States v. Palta*, 880 F.2d 636, 640 (2d Cir.1989); *see also United States v. Kim*, 896 F.2d 678, 681 (2d Cir.1990). Defense counsel must be given the opportunity to "focus on the technical issues of whether an upward departure is permissible under the statutory standard, 18 U.S.C. § 3553(b) (1988), whether a departure, if made, will be pursuant to part 4A or part 5K of the Guidelines, and whether anything in the Guidelines precludes such a departure." *Kim*, 896 F.2d at 681 (citation omitted). Resentencing is generally necessary if a court does not comply with these requirements. *See United States v. Margiotti*, 85 F.3d 100, 103 (2d Cir.1996) (*per curiam*) (citing *United States v. Axelrod*, 48 F.3d 72, 72–73 (2d Cir.1995) (*per curiam*)).

■ The district court announced its intention to depart upward from the sentencing range at the beginning of the sentencing hearing only minutes before the imposition of sentence. The Government made no motion for an upward departure, and the Presentence Investigation Report (hereinafter "PSR") specifically provided that the probation officer had "no information concerning the offense or the offender which would warrant a departure from the prescribed sentencing guidelines." The Government argues, however, that defense counsel was on notice of the grounds for the district court's departure because the PSR contained a recitation of Carter's criminal conduct. If we accepted this argument, all defendants would be on notice as to any *sua sponte* departure when the crime is described in the PSR. *See United States v. Mangone*, 105 F.3d 29, 35 (1st Cir.1997) (rejecting argument that recitation of the defendant's criminal conduct in the PSR provides adequate notice). Because the law requires that defense coun-

sel be forewarned of the specific grounds for the court's departure so that counsel may prepare arguments in opposition, the information contained in a traditional PSR is not adequate notice of a departure under the Guidelines.[4] Thus, we find that the district court did not provide adequate notice of its intention to depart in this case.

■ Despite our finding of inadequate notice, we agree with the Government that the district court cured any error that it made. After realizing that defense counsel was entitled to adequate notice before imposition of sentence, the district court gave defense counsel two opportunities to address the grounds for upward departure. Before entering judgment, the district court permitted defense counsel to submit written opposition to the upward departure. The court also reconvened the sentencing hearing three days later so that defense counsel could argue orally against the upward departure. There is no indication that the district court did not give full consideration to defense counsel's argument. Accordingly, although we strongly advise a district court to provide notice of its intention to depart upward and to give defense counsel the opportunity to articulate his or her grounds for opposing the departure before the sentencing hearing, we find that the inadequate notice provided in this case was cured.

■ We now turn to the substantive validity of the upward departure. A district court may depart from the base level of sentencing pursuant to U.S.S.G. § 5K2.0 where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). A district court may not, however, depart to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by a part of the Guideline used to determine

the base level for sentencing. *See United States v. Coe*, 891 F.2d 405, 410 (2d Cir. 1989). Carter argues that the factor relied upon by the district court, namely, the repeated purchases and interstate transportation of guns and the added dangerousness to the Rochester community as a result of selling those guns in high crime areas, were already taken into consideration by the Guidelines in determining the base level sentence for his conviction under 18 U.S.C. § 922(a)(1). Accordingly, we must examine the factors considered by the Sentencing Commission in formulating the sentence for an offense under 18 U.S.C. § 922(a)(1).

■ A conviction under 18 U.S.C. § 922(a) ordinarily contemplates more than one isolated gun sale. *See United States v. Carter*, 801 F.2d 78, 81 (2d Cir. 1986). Title 18 U.S.C. § 922(a)(1)(A) criminalizes being "engaged in the business" of selling guns. "Engage[d] in the business" is defined as "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit." 18 U.S.C. § 921(a)(21)(C). Hence, the Sentencing Guidelines, when fashioning the appropriate sentence, took into account that a conviction under this statute contemplates more than the sale of one gun.

Furthermore, the base level sentence applied to Carter in this case specifically considers the number of firearms involved. U.S.S.G. § 2K2.1 applies to a conviction under 18 U.S.C. § 922(a)(1). Pursuant to this provision, an offender's offense level is increased depending on the number of guns involved. *See* U.S.S.G. § 2K2.1(b)(1). In his plea agreement with the Government, Carter agreed to a five-offense level increase based on the fact that his conduct involved more than 24 firearms. Therefore, reliance on this factor—that Carter sold a total of 39 firearms in Rochester—is

---

4. We are not addressing here a situation in which the PSR identified specific grounds

that might constitute the basis for an upward departure.

"not permissible because the Guidelines provide a precise method for calculating the incremental punishment appropriate" for the number of guns. *Coe*, 891 F.2d at 410.

■ In departing upward from the base level, the district court did not, however, rely solely on the number of firearms involved, a factor already counted in calculating Carter's base offense level. The district court explicitly noted that it was the repeated nature of Carter's conduct that warranted the departure. Although the Sentencing Guidelines punish incrementally the number of firearms that a gun runner introduces into a community, it does not differentiate between an offender who engages in a single sale or a number of sales. Although the same number of guns ultimately enter a neighborhood regardless of whether they are brought in by a single or multiple trips, it is within a district court's discretion, when imposing its sentence, to consider the dangerousness apparent in a defendant who has acted illegally more than once. *See United States v. Medina–Gutierrez*, 980 F.2d 980, 984 (5th Cir.1992).

Therefore, because the number of sales in which a defendant engaged may be a permissible basis for an upward departure, we find that the district court did not abuse its discretion in departing upward here. *See United States v. Delmarle*, 99 F.3d 80, 84 (2d Cir.1996) ("A district court's decision to depart from the Guidelines ... will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing judge.") The district court found that Carter systematically purchased firearms approximately every two months for the purpose of selling them in Rochester, which he specifically targeted because of its high crime rate and high demand for guns that he could exploit for greater profit. Moreover, each time that Carter engaged in such transactions, he knew or

had reason to believe they would be used for illegal purposes and foreseeably lead to violence in a community that included his neighbors, friends and family. Under these circumstances, the district court did not abuse its discretion in departing upward from the guideline range.

## II. Criminal History Category

■ We affirm the district court's upward departure. We find, however, that the district court erred in its application of U.S.S.G. § 4A1.2(c) and that, under a proper reading, his past conviction for harassment should not be counted in calculating his criminal history score. We review a district court's interpretation and application of the United States Sentencing Guidelines *de novo*. *See United States v. Zagari*, 111 F.3d 307, 323 (2d Cir.1997).

Chapter 4, Part A of the Sentencing Guidelines sets out the procedure for calculating a defendant's criminal history score. An assessment of criminal history is made because Congress has adopted the view that "[a] defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment." U.S.S.G., Chapter 4, Part A, Introductory Commentary (1998). Not all prior convictions, however, are properly included in a defendant's criminal history score and U.S.S.G. § 4A1.2 explains which prior sentences should be excluded. Specifically, § 4A1.2(c) provides that all misdemeanor convictions are counted when calculating a defendant's criminal history category unless they fall within or are similar to the list of offenses specifically identified in that section.[5]

Harassment is not identified as an exempted offense in § 4A1.2(c). The district court also determined that harassment was not "similar" to the offenses listed in that section and therefore concluded that Carter's conviction for harassment should be

---

**5.** Offenses listed in subparagraph (1) of U.S.S.G. § 4A1.2(c) will be counted, however, if they meet additional requirements not relevant here.

counted in the criminal history calculation. When conducting its similarity analysis, the district court relied on *United States v. Elmore*, 108 F.3d 23 (3d Cir.1997). In that case, the United States Court of Appeals for the Third Circuit held that a harassment conviction is not similar to a disorderly conduct conviction listed in § 4A1.2(c)(1) because harassment is a crime against a person rather than the public. *See id.* at 26. The district court also considered and rejected Carter's argument that harassment is less serious than the crimes listed in § 4A1.2(c). Otherwise, the district court did not elaborate on what factors it considered in conducting its similarity analysis.

█ At the time that Carter was sentenced, this Court had not yet explicitly addressed how district courts should determine whether a prior offense is "similar" to the listed offenses in § 4A1.2(c). After the district court sentenced Carter, but before we heard appellate argument, this Court decided *United States v. Martinez–Santos*, 184 F.3d 196 (2d Cir.1999). Although this decision was not available to Judge Telesca at the time of sentencing, it nonetheless applies to our direct review of the sentence. *See Griffith v. Kentucky*, 479 U.S. 314, 322–23, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In *Martinez–Santos*, we adopted a multi-factor test for determining whether crimes are "similar" to those listed in § 4A1.2(c). *See* 184 F.3d at 204–06. This test requires that the district court

> take a common sense approach which relies on *all possible factors of similarity,* including a comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

*Id.* at 200 (citations omitted).

In the instant case, the record does not demonstrate that the district court applied such a multi-factor test. Indeed, the United States Court of Appeals for the Third Circuit in *Elmore*, upon which the district court relied, explicitly declined to apply a multi-factor analysis. *See Elmore*, 108 F.3d at 27. Accordingly, we remand the case so that the district court can determine whether harassment is "similar" to any of the crimes listed in § 4A1.2(c) under the multi-factor test articulated in *Martinez–Santos*.

### CONCLUSION

We remand so that the district court may determine whether Carter's 1992 harassment conviction is properly included in the calculation of his criminal history category pursuant to the multi-factor test announced in *Martinez–Santos*. We affirm the sentence in all other respects.