United States Court of Appeals,

Fifth Circuit.

No. 96-50466

Summary Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

Jay Lloyd McDONALD, also known as Charles McDonald, Defendant-Appellant.

Feb. 21, 1997.

Appeal from the United States District Court for the Western District of Texas.

Before JONES, DeMOSS and PARKER, Circuit Judges.

PER CURIAM:

## BACKGROUND

Jay Lloyd McDonald pleaded guilty to both counts of an indictment that charged him with using false identification documents and possessing 15 or more unauthorized access devices. At his plea proceeding, McDonald agreed to the following factual basis for his plea: Upon his arrests after the revocation of his state probation, a search of his vehicle revealed that he was carrying at least five false identification documents; most of the documents bore the name of Charles McDonald and one was a false driver's license. McDonald also was carrying more than 15 "access devices," including fraudulently obtained credit cards and blank checks. McDonald had used these items to defraud many merchants and financial institutions, in the amount of approximately $82,679.54.

In McDonald's Presentence Report ("PSR"), the Probation Office made the following recommendations regarding his sentence: McDonald's base offense level was 6. U.S.S.G. § 2F1.1(a). Six levels were to be added because McDonald caused more than $70,000 in losses. U.S.S.G. § 2F1.1(b)(1)(G). A further two-level increase was required because his offense involved "more than minimal planning." U.S.S.G. § 2F1.1(b)(2). McDonald was entitled to a two-level reduction for acceptance of responsibility, resulting in a total offense level of 12. U.S.S.G. § 3E1.1(a). His criminal history score was 10, for a Category V criminal history; one criminal-history point was

attributable to a 1994 Texas misdemeanor conviction for "failure to identify," in which he gave a fictitious name and showed a false driver's license to police officers. McDonald's total offense level and criminal history score combined for a sentencing guideline range of 27 to 33 months.

McDonald objected to the inclusion of the "failure to identify" offense in his criminal history score. Citing § 4A1.2(c)(1)(A), he argued that it should not count because it was a misdemeanor with a prison term of less than 30 days. The Probation Office countered that the 1994 offense was includable because it involved "similar conduct" to his federal offense, in that McDonald had used a fraudulent driver's license in an attempt to avoid arrest after an officer arrived with an arrest warrant. *Id.*

At sentencing, the district court overruled McDonald's objection, reasoning that "the substance of the failure to identify ... was not only a failure to identify but to give a fictitious name" and that the prior offense was therefore "close enough to the type of conduct involved" in this case to warrant its inclusion in McDonald's criminal history score. The court sentenced McDonald to concurrent 30-month prison terms and a three-year supervised release term and ordered him to pay $35,922.76 in restitution. McDonald timely filed a notice of appeal.

OPINION

McDonald contends that his 1994 misdemeanor offense for "failure to identify" should not have been included in his criminal history score. He observes that the state offense, which involved providing false information to a police officer, is specifically listed in § 4A1.2(c)(1) as a misdemeanor conviction that is ordinarily to be excluded in computing that score. Acknowledging that such offenses may be counted if the "prior offense was similar to an instant offense," McDonald contends that his 1994 Texas offense was different from both of federal charges to which he pleaded guilty. He also argues that he was prejudiced, because without the one criminal-history point for the 1994 offense, his score would have been only nine and he would have had only a Category IV criminal history.

"Misdemeanor offenses and petty offenses are generally considered in calculating a defendant's criminal history score." *United States v. Gadison,* 8 F.3d 186, 193 (5th Cir.1993) (citing

§ 4A1.2(c)). However,

> (1) [s]entences for the following prior offenses *and offenses similar to them,* by whatever name they are known, are counted *only if* (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days,[1] or (B) *the prior offense was similar to the instant offense:*
>
> .   .   .   .   .
>
> *False information to a police officer....*

§ 4A1.2(c)(1) (emphasis added).

> In *United States v. Hardeman,* 933 F.2d 278 (5th Cir.1991), [this Court] established a "common sense" approach to determine when a prior offense is "similar" to one of the enumerated exempted offenses in § 4A1.2(c)(1). The *Hardeman* approach requires the district court to assess all factors of similarity, including
>
> > a comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.
>
> *Hardeman,* 933 F.2d at 281. A court employing the *Hardeman* factors should do so cognizant of the fact that the criminal history factors are designed to take into account the relative severity of a prior offense as well as the degree to which it indicates the likelihood of future criminal behavior. *Id.* at 281-82.

*Gadison,* 8 F.3d at 193. "The word "offense', as used [in § 4A1.2(c) ], includes any relevant conduct and not just the conduct charged in the indictment." *United States v. Moore,* 997 F.2d 30, 34 (5th Cir.1993) (citation omitted). "In reviewing [such] claim[s], we must accept the factual findings of the district court unless clearly erroneous, but we review de novo the application of the guidelines for errors of law." *Id.* (citation and internal quotation marks omitted).

In McDonald's case, the Probation Office urged that his 1994 conviction for "failure to identify" was similar to his instant conviction for possession of false identification documents because both involved the use of a false driver's license. McDonald's federal conviction for possession of false identification documents is based on the following provisions:

(a) Whoever, in a circumstance described in subsection (c) of this section— ...

(3) knowingly possesses with intent to use unlawfully ... five or more ... false identification documents; ...

---

[1]It is not disputed that McDonald's 1994 "failure to identify" sentence did not qualify for the exception listed in subsection (c)(1)(A).

or attempts to do so, shall be punished as provided in subsection (b) of this section. 18 U.S.C. § 1028(a). Subsection (c) refers to the circumstance that "the ... possession prohibited by this section is in or affects interstate or foreign commerce...." § 1028(c)(3). If the offense involves more than five identification documents, the offender is subject to imprisonment of up to five years. § 1028(b)(1)(B).

McDonald's "failure to identify" conviction was based on the following provision: "A person commits an offense if he intentionally gives a false or fictitious name ... to a peace officer who has: (1) lawfully arrested the person...." TEX.PENAL CODE ANN. § 38.02(b). McDonald was sentenced to five days in jail for his "failure to identify" offense. The parties agree that because officers were serving an outstanding arrest warrant on McDonald, his offense was a "Class B" misdemeanor that carried a maximum penalty of 180 days in jail.

It is undisputed that both offenses involved the use of a false driver's license. The Government focuses on this fact in arguing that the two offenses were "similar" for the purposes of § 4A1.2(c). The Government also contends that McDonald's 1994 offense "was far more serious than merely giving "false information to a police officer,' " because it "strongly suggested the possibility of future criminality." The Government asserts that the 1994 offense was "consistent with planned criminal conduct" and "suggest[ed] a more calculating, resourceful and more dangerous criminal."

McDonald emphasizes the differences in the maximum penalties for the two offenses: five years versus 180 days. He notes that the elements of the offenses are different, in that his federal offense not only requires the possession of false identification but also the use of that identification to unlawfully affect interstate commerce.

The parties do not explicitly dispute that McDonald's "failure to identify" offense was "similar" to the "false information" offense listed in § 4A1.2(c).

We believe that *Moore* provides the closest analog to the circumstances in McDonald's case. In *Moore,* this Court, applying § 4A1.2(c), compared a defendant's prior state crime of evading arrest to his federal conviction for assaulting a federal officer. *Moore,* 997 F.3d at 34-35. The defendant,

Moore, shot at a DEA agent during a raid on a "crack house." *Id.* at 32-33. This Court identified the following differences in the two crimes: they carried far different maximum penalties (six months versus 10 years); the federal offense involved violence, but the prior state one did not; and Moore was only a teenager at the time of the earlier offense. *Id.* at 35. However, this Court observed that both offenses "involved nearly identical conduct," in that Moore possessed a gun and fled on both occasions. *Id.* Moreover, "while Moore's prior evading arrest conviction may not have indicated some likelihood to commit future offenses, the fact that Moore has now attempted to evade arrest twice and that he was willing to shoot a police officer to do so indicates a likelihood of recurring criminal conduct." *Id.* In balancing the differences and similarities, this Court upheld the district court's imposition of a criminal history point for Moore's "similar" evading-arrest offense. *Id.*

The Court's reasoning in *Moore* supports the district court's ruling that McDonald's "failure to identify" offense was "similar" to his federal conviction for possession of false identification documents. McDonald's use of false identification was central to both offenses. Likewise, we read the district court's decision as satisfying the balancing requirements of *Hardeman.* The district court's decision is

AFFIRMED.