IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 21, 2008

Charles R. Fulbruge III
Clerk

No. 07-50761

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JORGE ALONSO ARROYOS-FERNANDEZ, also known as Jose
Arvizu-Lukin

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:06-CR-01246-KC-3

Before PRADO, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Jorge Alonso Arroyos-Fernandez ("Arroyos") appeals
the sentence imposed following his plea of guilty to one count of conspiracy to
possess marijuana with intent to distribute. Arroyos challenges two upward
sentence adjustments imposed by the district court. Finding no error in
Arroyos's sentence, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

## I.  FACTS AND PROCEDURAL HISTORY

Arroyos was charged, along with his brother and another co-conspirator, in a one-count superseding indictment, with conspiracy to possess with intent to distribute fifty kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C).  Arroyos pleaded guilty without a plea agreement.

The Presentence Investigation Report ("PSR") began with a base level of twenty-four, subtracted three levels for acceptance of responsibility, and added two levels for Arroyos's role as a manager/superviser, pursuant to U.S.S.G. § 3B1.1(c).  This resulted in a total offense level of 23.  For criminal history, the PSR applied one point for Arroyos's 1991 state drug conviction and one point for a 2006 federal misdemeanor fraud conviction, resulting in a criminal history category of II.  Combining these metrics, Arroyos's Guidelines sentence range was 51 to 63 months.

Arroyos filed written objections to the manager/supervisor role enhancement and the scoring of his 2006 fraud conviction, and he renewed these objections at the sentencing hearing.  The district court overruled Arroyos's objections and imposed a sentence of 60 months' imprisonment plus 3 years of supervised release and a $100 special assessment.  Arroyos brought this timely appeal.

We have jurisdiction to hear a direct appeal of a final judgment in a criminal case pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## II.  DISCUSSION

A.  Role Enhancement

i.  Standard of Review

We review a district court's factual finding that a defendant was a manager or supervisor under U.S.S.G. § 3B1.1(c) for clear error.  United States

v. Powell, 124 F.3d 655, 667 (5th Cir. 1997).  Such a finding is not clearly erroneous as long as it is plausible in light of the record as a whole.  United States v. Fullwood, 342 F.3d 409, 415 (5th Cir. 2003).

ii.  Analysis

The Sentencing Guidelines provide for a two-level upward adjustment upon a finding that the defendant was "an organizer, leader, manager, or supervisor" of the crime.  U.S.S.G. § 3B1.1(c).  To qualify for this adjustment,

> the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.  An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

Id. at cmt. n.2.  The sentencing court may consider any relevant information "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  Id. § 6A1.3(a).  We have held that, for sentencing purposes, "even uncorroborated hearsay evidence is sufficiently reliable."  United States v. West, 58 F.3d 133, 138 (5th Cir. 1995) (internal quotation marks omitted).  "The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue."  United States v. Valencia, 44 F.3d 269, 274 (5th Cir. 1995).

In this case, the district court relied on statements by Arroyos's co-conspirators as support for the manager/supervisor adjustment.  In a post-arrest statement referenced in the PSR, one of Arroyos's co-defendants, Alberto Bueno-Gorena ("Bueno-Gorena"), stated that Arroyos was "the organization's head in Tucson, Arizona," and that Arroyos and his wife were involved in laundering the proceeds from the sale of illegal drugs and storing large amounts of currency in their house.  Another co-conspirator, Adimando Penaloza-Aguilar, stated in his

post-arrest statement that Arroyos and Arroyos's brother, Armando, were "high level members of the organization" and that the marijuana seized in this offense belonged to them. The district court also took note of recorded phone conversations in which co-conspirators referenced Arroyos, as well as the fact of Arroyos's 1991 conviction for possession of two kilos of cocaine, which suggests that he had long been involved in the drug trade.[1]

On appeal, Arroyos contends that the co-conspirators' statements are insufficient to support the district court's role adjustment. For example, Arroyos cites several of the co-conspirators' descriptions of drug operations that make no mention of Arroyos. However, these statements do not directly rebut the co-conspirators' own statements that Arroyos was a supervisor.[2]

Arroyos also notes that the co-conspirator statements are unaccompanied by corroborating evidence. For example, despite Bueno-Gorena's allegations that Arroyos and his wife laundered and stashed money, Arroyos asserts that after a two-year federal investigation, the government has found no evidence to support those allegations. However, corroborating evidence is not required. We have explicitly held that the district court may rely on uncorroborated hearsay evidence in sentencing. See West, 58 F.3d at 138.

In light of other evidence, such as phone conversations and Arroyos's prior conviction, the district court chose to credit the co-conspirators' statements. This was largely a credibility determination, and we give deference to the credibility determinations of the district court. United States v. Perez, 217 F.3d 323, 332 (5th Cir. 2000) ("We defer to the trial court's superior position in making such credibility calls.").

---

[1] According to the government, this large quantity of drugs indicates Arroyos was "clearly not a street-level dealer."

[2] In fact, at sentencing, the government implied that Arroyos's lack of involvement in low-level trafficking operations actually supports a finding that he was a manager/supervisor.

Because Arroyos has failed to carry his burden of showing that these facts lacked sufficient indicia of reliability, we cannot conclude that the district court clearly erred in its factual finding supporting the role adjustment in this case. The district court's factual finding that Arroyos was a manager/supervisor is plausible in light of the record as a whole, and therefore it is not clearly erroneous. See Fullwood, 342 F.3d at 415.

## B. Criminal History Calculation

### i. Standard of Review

We review a district court's application of the Sentencing Guidelines de novo. United States v. Cerverizzo, 74 F.3d 629, 630 (5th Cir. 1996).

### ii. Analysis

The district court added a criminal history point for Arroyos's prior federal misdemeanor conviction for an incident in Arizona in 2006. Immigration and Customs Enforcement agents came to Arroyos's door and asked him to identify himself. Arroyos showed them an Arizona driver's license issued in a name other than his own in an attempt to show that he was in the United States legally. Arroyos was in fact a Mexican citizen in the United States without a lawful visa.

Arroyos pleaded guilty to a violation of 18 U.S.C. § 1028(a)(4). That statute makes it a crime to "knowingly possess[] an identification document (other than one issued lawfully for the use of the possessor), authentication feature, or a false identification document, with the intent such document or feature be used to defraud the United States." 18 U.S.C. § 1028(a)(4). Arroyos served a twenty-day sentence in Arizona before he was moved to Texas for proceedings in the instant case.

Under the federal Sentencing Guidelines, a prior misdemeanor conviction does not count toward a defendant's criminal history score if it is "similar to" one of the offenses listed in § 4A1.2(c)(1) or similar to another offense that itself is

5

similar to one of the listed offenses. U.S.S.G. § 4A1.2(c)(1). An exception to this rule applies if "(A) the sentence [in the prior offense] was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense . . . ." U.S.S.G. § 4A1.2(c)(1). Because Arroyos served only a twenty-day term of imprisonment for his prior crime, and that crime was not similar to the instant offense, the only relevant issue here is whether the prior crime was "similar to" one of the offenses listed in § 4A1.2(c)(1).

In determining whether a prior offense is "similar to" one of the offenses listed in §4A1.2(c), this court follows "a common sense approach which relies on all possible factors of similarity." United States v. Hardeman, 933 F.2d 278, 281 (5th Cir. 1991). Such factors include

> a comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

Id. If the factors, "taken as a whole, indicate that the offense is, like the listed offenses, neither particularly serious nor likely to indicate recurring criminal conduct, then the defendant's prior offense should be excluded." Id. at 282. "A court employing the Hardeman factors should do so cognizant of the fact that the criminal history factors are designed to take into account the relative severity of a prior offense as well as the degree to which it indicates the likelihood of future criminal behavior." United States v. Gadison, 8 F.3d 186, 193 (5th Cir. 1993). In this case we must decide whether, under the Hardeman factors, Arroyos's conviction under § 1028(a)(4) is "similar to" the listed crime of false information to a police officer or a crime similar to it.

We look to the state "failure to identify" offense under Texas Penal Code § 38.02(b) for guidance on defining the generic offense. See United States v.

Reyes-Maya, 305 F.3d 362, 367-68 (5th Cir. 2002) (noting that the Texas failure to identify offense is similar to the generic offense of "[f]alse information to a police officer" listed in the Guidelines); see also United States v. Lopez-Pastrana, 244 F.3d 1025, 1028 n.4 (9th Cir. 2001) ("For purposes of comparison, we use the federal definitions of the listed offenses. Where there is no federal law on point . . . we may look to either state law or the Model Penal Code." (citation omitted)).[3] Under the failure to identify statute, "[a] person commits an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has . . . lawfully detained the person." TEX. PENAL CODE ANN. § 38.02(b)(2).

Regarding the range of possible punishments, Arroyos's prior conviction carried a possible punishment range of up to one year imprisonment, see 18 U.S.C. § 1028(b)(6), while the maximum punishment under § 38.02(b) is 180 days, see TEX. PENAL CODE ANN. §§ 12.22, 38.02(c)(2). However, in terms of "perceived seriousness," we consider the actual punishment range given rather than the statutory range: "More important than the statutory range of punishments is the actual punishment given, as '[t]he level of punishment imposed for a particular offense serves as a reasonable proxy for the perceived severity of the crime.'" Reyes-Maya, 305 F.3d at 367 (quoting Hardeman, 933 F.2d at 282). Arroyos received only a twenty-day sentence for his crime, which suggests a level of seriousness similar to or lower than the generic state crime.

The elements of the two crimes, on the other hand, are dissimilar. A conviction under § 1028(a)(4) requires a showing that the defendant (1) knowingly possessed a false identification document, (2) "with intent . . . to defraud the United States." 18 U.S.C. § 1028(a)(4). By contrast, the state failure to identify statute does not involve the possession of false documents, but

---

[3] Because neither party argues that federal law provides a definition for the listed offense at issue here, we do not consider that possibility.

merely makes it a crime to "intentionally give[] a false or fictitious name, residence address, or date of birth to a peace officer." TEX. PENAL CODE ANN. § 38.02(b). This is a significant difference because, under § 1028(a)(4), an individual must have undertaken a prior act to obtain a false document, possibly in anticipation of using it fraudulently. Merely giving false information verbally, as described by the Texas statute, requires no forethought. The Seventh Circuit has endorsed such a distinction in this context:

> The giving of false [oral] information, as where a person arrested for speeding claims not to have known the speed limit or to have a malfunctioning speedometer, is often spontaneous; and the human proclivity for self-exculpation, which is what usually triggers a tender of false information to a police officer, is well-nigh universal. The element of calculation is greater when an individual goes to the bother of obtaining a false document in advance of any confrontation with an officer.

United States v. Caputo, 978 F.2d 972, 978 (7th Cir. 1992). We find this analysis persuasive. Because seriousness of the offenses is a relevant factor under Hardeman, it is important to recognize that the crime of using a false identification document carries a greater level of seriousness than the generic failure to identify or false information offense.[4]

Therefore, we are convinced that the elements required for a conviction under § 1028 indicate a level of seriousness higher than the generic offenses of false information to a police officer or failure to identify. Accordingly, we hold that the district court did not err in applying a criminal history point for Arroyos's prior § 1028(a)(4) conviction.

---

[4] The parties rely on our decision in United States v. McDonald, 106 F.3d 1218 (5th Cir. 1997). However, McDonald does not bear directly on this case because it involved comparing a prior conviction under Texas Penal Code § 38.02(b)(1) with an actual offense under 18 U.S.C. § 1028(a)(3). See McDonald, 106 F.3d at 1220. By contrast, our task in this case is to decide whether a prior conviction under 18 U.S.C. § 1028(a)(4) is "similar to" the generic offense of "[f]alse information to a police officer."

## III. CONCLUSION

Because the district court properly applied upward adjustments to Arroyos's sentence for his manager/supervisor role and his prior misdemeanor conviction, we affirm the sentence imposed by the district court.

AFFIRMED.