# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 22, 2024

Lyle W. Cayce
Clerk

No. 22-20301

United States of America,

*Plaintiff—Appellee*,

*versus*

Taylor Hildreth,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CR-154-1

Before Higginson, Willett, and Oldham, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Taylor Hildreth pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He now appeals his sentence and conviction. Finding no reversible error, we AFFIRM.

I

In July 2020, police surveilling two known narcotics locations stopped a car in which Hildreth was a passenger. The driver consented to a search, and Hildreth admitted that there was a "half ounce" of "dope" in his pant leg. A search of his pant leg revealed methamphetamine, Xanax, and drug

paraphernalia. More drug paraphernalia was found inside the car. A loaded firearm was recovered from the glove compartment in front of Hildreth's seat. Hildreth later admitted that the firearm was his and that he knew he was barred from possessing it because of his felony conviction for assault of a household member.

Hildreth was indicted for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and released on pretrial supervision. Less than a month later, he was arrested after his father accused him of assault. This arrest was determined to be a violation of Hildreth's pretrial supervision conditions. During the violation hearing, Hildreth's father recanted and testified that it was only a mutual "shoving match." Hildreth was ordered to enter in-patient drug treatment or have his pretrial release revoked. He entered treatment but was discharged for two facility policy violations—possession of a cell phone and makeshift tattoo gun—and returned to federal custody. He was eventually ordered back to in-patient treatment, which he completed.

Hildreth pleaded guilty to the single § 922(g)(1) count. Hildreth's former fiancée reported that he choked her while on release pending sentencing. Hildreth was arrested for this release violation and remained in custody pending sentencing.

The presentence investigation report (PSR) assessed a total offense level of eighteen and seven criminal history points, putting him in criminal history category IV. This put Hildreth's Guidelines range at forty-one to fifty-one months' imprisonment. The statutory maximum under § 922(g)(1) is 120 months.

The offense level was calculated using a base level offense of fourteen, pursuant to U.S.S.G. § 2K2.1(a)(6), and four levels were added for specific offense characteristics pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because

Hildreth—who was found with over sixteen grams of methamphetamine and over two grams of Xanax—possessed the firearm in connection with another felony offense. The PSR did not include an adjustment for acceptance of responsibility, reasoning that one was unwarranted because Hildreth continued to engage in criminal conduct by assaulting his father and former fiancée. Hildreth objected that this conduct was unproven. He maintained that the adjustment was warranted because he confessed to possession of the methamphetamine and ownership of the firearm at the time of his arrest and completed in-patient drug treatment. The government responded that this was outweighed by Hildreth's continued criminal conduct, and probation declined to amend the PSR in response to the objections.

The PSR calculated seven criminal history points, to which Hildreth did not object. As relevant to Hildreth's appeal, one of those points was assigned, pursuant to U.S.S.G. § 4A1.1(c), for a 2013 Texas state conviction for interference with public duties. The PSR noted that an upward departure might be warranted because the criminal history score underrepresented the seriousness of his criminal conduct—and attendant likelihood of recidivism—as several charges had been dismissed, several offenses were assaultive, and several more involved drug possession. The government sought an upward departure on this basis, while Hildreth pointed to letters of support to argue for a below-Guidelines sentence. Probation recommended a sentence of fifty-one months' imprisonment, followed by three years of supervised release.

The district court denied the adjustment for acceptance of responsibility and upwardly departed on the basis of criminal history inadequacy. It sentenced Hildreth to eighty months' imprisonment followed by three years of supervised released.

II

Hildreth raises four challenges on appeal.  We reject each in turn.

## A

First, Hildreth argues that, under U.S.S.G. § 4A1.2, his Texas misdemeanor conviction for interference with public duties should not have been included in the calculation of his criminal history points.  He did not argue this below, so any error can only be corrected if it meets the exacting plain-error standard.  *See Rosales-Mireles v. United States*, 85 U.S. 129, 133 (2018).  Under this standard, we ask whether there is error that is "clear or obvious, rather than subject to reasonable dispute" "affect[ing] the appellant's substantial rights" and, even then, we will only exercise our "discretion to remedy the error," "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"  *United States v. Puckett*, 556 U.S. 129, 135 (2009) (internal citations omitted) (emphasis omitted).  Because Hildreth cannot establish that any error was clear or obvious, we stop there.

U.S.S.G. § 4A1.2 sets out how criminal history points are computed. Subsection (c) establishes which prior sentences count toward these points. Generally, sentences for misdemeanor and petty offenses are counted, subject to exceptions that "screen out past conduct which is of such minor significance that it is not relevant to the goals of sentencing."  *United States v. Hardeman*, 933 F.2d 278, 281 (5th Cir. 1991).  Subsection (c)(1) lists offenses that, along with offenses "similar to" them, do not count unless (A) the sentence was more than one year probation or at least thirty days' imprisonment *or* (B) the offense is similar to the instant offense.

Hildreth argues that his Texas misdemeanor conviction for interference with public duties should not have counted because it is "similar to" the listed offense of "[h]indering or failure to obey a police officer" and neither condition for inclusion of subsection (c)(1) enumerated offenses (or

offenses similar to them) is met. Parties agree on this last point: Hildreth was sentenced only to two days' imprisonment, a fine, and no probation, and the Texas charge is unlike this felon-in-possession charge, so neither (A) nor (B) is satisfied. Therefore, we ask only whether Hildreth's interference with public duties offense is "similar to" "[h]indering or failure to obey a police officer." Given the multi-factor, fact-intensive nature of the inquiry and the presumption in favor of counting offenses, there is "reasonable dispute" as to whether Hildreth's prior offense is similar to the enumerated offense such that Hildreth cannot establish that inclusion of the offense was clear or obvious error. *Puckett*, 556 U.S. at 135.

We follow a "common sense approach" to the "similar to" inquiry, "rel[ying] on all possible factors," "including a comparison of punishments imposed," "the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." *Hardeman*, 933 F.2d at 281. "[I]f these tests for similarity, taken as a whole, indicate that the offense is, like the listed offenses, neither particularly serious nor likely to indicate recurring criminal conduct, then the defendant's prior offense should be excluded." *Id.* at 282. This follows from "the purpose of this section of the Guidelines: to screen out past conduct which is of such minor significance that it is not relevant to the goals of sentencing," because the "criminal history score is designed to take into account the seriousness of the past offense and the degree to which it suggests the possibility of future criminality." *Id.* at 281. "Assessing these factors also requires analyzing the entire episode which led to the prior conviction." *United States v. Reyes-Maya*, 305 F.3d 362, 367 (5th Cir. 2002). "Because the Guidelines' default rule for past offenses is one of inclusion, any doubts should be resolved in favor of counting the offense." *United States v. Hernandez*, 634 F.3d 317, 319 (5th Cir. 2011) (per curiam).

Hildreth pleaded guilty to interference with public duties and was sentenced to two days' imprisonment and a $100 fine. In Texas, a person commits interference with public duties if he "with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with" "a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." Tex. Penal Code § 38.15(a)(1). As a Class B misdemeanor, *id.* § 38.15(a)(b), it is punishable by a fine not to exceed $2,000, jail confinement for up to 180 days, or both, *id.* § 12.22.

The only account of the incident is a two-paragraph description in the PSR, which Hildreth did not challenge. Police arrived at Hildreth's father's residence and were advised that Hildreth had called emergency services for no reason while intoxicated. An officer "made contact" with Hildreth, who "immediately began making vague threats to the officer stating, 'I got people for you, mother f---ker' and 'they'll chop you up.'" Hildreth "appeared highly irate and agitated" and "showed multiple signs of intoxication." "When the officer attempted to interview [Hildreth], [he] continued to make threats towards the officer and revealed no information about any possible disturbance." Hildreth then "moved toward the officer, stated 'f--k your b---h ass,' and then pushed the officer's left shoulder with his right open hand," at which point he was arrested.

To argue that the enumerated offense of hindering or failure to obey a police officer is similar to his prior offense such that it should be excluded, Hildreth points to our unpublished decision in *United States v. Martinez-Cruz*, 539 F. App'x 560 (5th Cir. 2013) (per curiam). In that case, we examined elements of and penalties for interference with public duties under Texas law and concluded that, under "the plain language of the statute, [the defendant's] conviction for interfering with the duties of a public servant is essentially identical to the listed offense of hindering or fail[ure] to obey a

police officer." *Id.* at 563. We also pointed to the defendant's actual sentence for that crime of three days' imprisonment. *Id.*

Crucially, the government in *Martinez-Cruz* expressly conceded that it was clear or obvious error to count the offense. *Id.* at 562. And we have been careful to clarify that our enumerated offense holdings are necessarily "fact specific." *United States v. Gadison*, 8 F.3d 186, 194 (5th Cir. 1993) (holding that a prior offense was similar to the enumerated offense while emphasizing that "how a Guidelines sentence might be affected by [the same offense] under other facts" was a separate and open question). Here, this fact-specific inquiry requires us to conclude that inclusion of the offense, even if erroneous, was not clearly or obviously so. The government points to the fact that Hildreth pushed the officer and made violent threats, contending that this is "far different and more serious" than the enumerated offense because it was assaultive, which "indicate[s] a strong likelihood of recurring criminal conduct, as evidenced by Hildreth's pattern of crimes involving anger, violence, and often intoxication."

Importantly, Hildreth does not challenge this characterization of the conduct—itself drawn entirely from the PSR's unobjected-to description— nor does Hildreth challenge that it indicates a strong likelihood of recidivism. Hildreth instead argues that, even if the conduct was too assaultive to fall within the enumerated offense of "[h]indering or failure to obey a police officer," it would fall under another U.S.S.G. § 4A1.2(c)(1) enumerated offense, "resisting arrest." But even if resisting arrest were the better analog, Hildreth offers no argument as to why the conduct is not indicative of a high likelihood of recidivism, nor does he explain why we should disregard the uncontested, assaultive nature of the conduct when caselaw "recognize[s] that an offense bears greater culpability when it presents an increased risk of harm to others." *Hernandez*, 634 F.3d at 320. We therefore cannot say that inclusion of this offense, on these facts, was clear or obvious error.

7

B

Second, Hildreth argues that the district court erred in denying a two-level, downward adjustment for acceptance of responsibility. Section 3E1.1(a) of the Sentencing Guidelines provides for a two-level downward adjustment "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."   U.S.S.G. § 3E1.1(a).   "[B]ecause the district court is in a unique position to evaluate a defendant's acceptance of responsibility, its denial of a § 3E1.1 adjustment is reviewed with particular deference."   *United States v. Hinojosa-Almance*, 977 F.3d 407, 410–11 (5th Cir. 2020) (internal quotation marks and footnotes omitted).   "Such a 'ruling should not be disturbed unless it is without foundation.'"   *Id.* at 411 (quoting *United States v. Maldonado*, 42 F.3d 906, 913 (5th Cir. 1995)).   The record shows that the district court denied the adjustment based on Hildreth's continued criminal conduct, rather than a factual misunderstanding or impermissible speculation.   Hildreth thus cannot show that the denial was without foundation.

Hildreth contends that the district court's denial of acceptance of responsibility was error because it rested on unfounded speculation about his motivations and clear factual error, pointing to the district court's misstatement that Hildreth only admitted to possession of the firearm *after* it was found by police.   He maintains that the concededly legitimate basis for denying the adjustment—post-offense, continued criminal conduct—was therefore tainted.   The government concedes that the district court initially misstated when the firearm was discovered but notes, correctly, that Hildreth's counsel clarified the timeline at sentencing, which the district court then acknowledged.   And the government has the better reading of the sentencing hearing and the PSR, which the district court adopted:   Each weighed Hildreth's admission of guilt against his violent, post-offense

conduct to independently reach the conclusion that a downward adjustment was unwarranted.

## C

Third, Hildreth argues that "some" of the reasons the district court gave for upwardly departing were the result of "unfounded speculation" that played a "substantial part in the district court's decision." Specifically, he points to comments the district court made about why Hildreth might have had a cell phone during in-patient treatment and other comments about why Hildreth might have received letters of support. Hildreth does not challenge the degree of departure.

"If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." U.S.S.G. § 4A1.3(a)(1). Departures are reviewed for abuse of discretion. *United States v. Delgado-Nunez*, 295 F.3d 494, 497 (5th Cir. 2002). "There is no abuse of discretion if the judge provides acceptable reasons for departure and the degree of departure is reasonable." *United States v. Nevels*, 160 F.3d 226, 229–30 (5th Cir. 1998).

Hildreth fails to show an abuse of discretion because, even if the district court's comments were erroneous, Hildreth cannot establish that those comments, rather than Hildreth's underrepresented criminal history, were the basis for the departure. The district court repeatedly noted that Hildreth's past conduct revealed "extreme anger and drug issues" that would mean the district court "would be failing to protect the public from future crimes by [Hildreth] and from deterring [Hildreth] from future crimes" by not departing upward. The district court emphasized that the transcript of Hildreth's supervision violation hearing, as well as the exhibit

photos of his father's injuries, showed that Hildreth was a "violent person." It observed that Hildreth had "a Criminal History Category of IV and [Hildreth was] only thirty years old," so "[t]he fact that [he] only served two years for all that [he had] done so far [was] an indication" that he "still ha[d] not learned [his] lesson that [he] can't engage in this conduct with a two year sentence" and a "much harsher sentence [was] required." The district court later emphasized that, while Hildreth could change, it did not "believe that the time that [Hildreth had] spent in prison so far is going to make [him] that person." The district court summarized its position by explaining that Hildreth's "extensive pattern of criminal conduct and violence against family members, as well as domestic partners, and [his] continued involvement in drugs and alcohol show[ed] a strong likelihood" of recidivism so that, "pursuant to U.S.S.G. § 4A1.3" a departure was "not only warranted but necessary to promote respect for the law, reflect the seriousness of the offense, and provide just punishment while deterring and protecting the public from future criminal conduct by [Hildreth]." Given this record, Hildreth cannot establish that the district court abused its discretion.

D

Finally, Hildreth argues, for the first time on appeal, that 18 U.S.C. § 922(g)(1) is facially unconstitutional. Our review is for plain error. *Rosales-Mireles*, 85 U.S. at 133. His challenge is foreclosed by *United States v. Jones*, 88 F.4th 571 (5th Cir. 2023). There, our court rejected a plain-error challenge to § 922(g)(1) because "it is unclear that *Bruen*[1] dictates such a result," there is an "absence of binding precedent holding that § 922(g)(1) is unconstitutional," and "[t]he Third and Eighth Circuits have . . . reached

---

[1] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

No. 22-20301

conflicting results" on the issue. *Id.* at 574 (internal quotation marks omitted). Hildreth's plain-error challenge fails.

\* \* \*

For the foregoing reasons, the sentence and conviction are AFFIRMED.