# United States Court of Appeals for the Fifth Circuit

———————

No. 23-50755

———————

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2025

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Eddie Lamont Bell,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:23-CR-85-1

———————————————————————

Before Elrod, *Chief Judge*, and Dennis and Higginson, *Circuit Judges*.

Jennifer Walker Elrod, *Chief Judge*:

Eddie Lamont Bell pleaded guilty to a violation of 18 U.S.C. § 922(g)(1) after officers found him in possession of a firearm. On appeal, Bell argues that § 922(g)(1) is facially unconstitutional under the Second Amendment and the Commerce Clause. He concedes that these arguments are foreclosed in this circuit. He also appeals his sentence, arguing that the district court erred in (1) denying him an acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1 because he was involved in an altercation with his cellmate before sentencing and (2) applying an elevated offense level

under U.S.S.G. § 2K2.1 because his offense involved a firearm capable of accepting a large-capacity magazine. As Bell concedes, his constitutional challenges to 18 U.S.C. § 922(g)(1) are foreclosed. However, because we agree with Bell that his pre-sentencing conduct does not outweigh the "significant evidence" of his acceptance of responsibility, we VACATE Bell's sentence and REMAND for resentencing.

I

In May 2023, Midland, Texas police officers responded to a fight and shooting outside a local bar and found Eddie Lamont Bell asleep in the driver's seat of his vehicle. Officers observed a semiautomatic .40 caliber Glock 27 pistol on top of his center console. Bell appeared intoxicated, and after speaking with the officers, he admitted that he was a convicted felon.

Police later inventoried Bell's vehicle and discovered that the pistol was loaded with a .40-caliber, 9-round magazine that contained 8 rounds of ammunition. They also found a .40-caliber, 29-round magazine that contained 28 rounds of ammunition and 16 grams of cocaine in Bell's driver's side door.

A grand jury later returned a one-count indictment charging Bell with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Bell pleaded guilty.

After pleading guilty but before sentencing, Bell got into an altercation with a fellow inmate, Hipolito Brito, at the correctional facility where they were housed after Bell apparently asked Brito to stop loudly snoring. Video surveillance of the cell captured the incident, although the cameras did not record audio. The video shows Bell exit his bunk, tap Brito, and say something to him. Bell returns to his bunk and lays down. Brito then sits up in his bunk and says something to Bell across the cell. A few seconds later, Bell and Brito meet in the middle of the cell, where the two exchange words.

Bell then points at Brito twice, and Brito pushes Bell's hands away. Brito then punches Bell in the face. Bell grabs a broom and continues to speak to Brito, and then Brito strikes Bell's head with a water cooler. Bell attempts to punch Brito once, in the last seconds of the encounter. Eventually, detention officers arrive and end the altercation. Bell was never disciplined by prison authorities or criminally charged following the dispute.

Before sentencing, probation officers prepared Bell's presentence investigation report and applied a base offense level of 26 pursuant to U.S.S.G. § 2K2.1(a)(1). Section 2K2.1(a)(1) applies, among other requirements not relevant here, if the offense involved a semiautomatic firearm that is capable of accepting a large-capacity magazine. The probation officer determined that Bell's firearm and 29-round magazine qualified under the Guidelines for the elevated base offense level.

Bell's PSR did not recommend a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. Although the PSR acknowledged that Bell "accepts responsibility for his actions," it recommended that Bell did not qualify for the adjustment because he "appear[ed] to be the aggressor in th[e] altercation" with Brito and thus "failed to terminate or withdraw from criminal conduct."

Bell objected to the lack of a downward adjustment for acceptance of responsibility. The probation officer declined to alter the PSR, acknowledging that although Brito "[threw] the first punch," Bell was nonetheless the aggressor and "did nothing to de-escalate the situation or retreat from the altercation." Bell renewed his objection at sentencing, and the district court overruled the objection.

The district court adopted the PSR as accurate and sentenced Bell to 115 months' imprisonment, three years' supervised release, and a $100 special assessment. Bell timely appealed.

No. 23-50755

II

Bell appeals his conviction and sentence, raising three arguments. First, he argues that the district court erred in denying him an acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1. Second, he argues that the district court erred in applying the elevated base offense level found in U.S.S.G. § 2K2.1(a)(1) for an offense involving a large-capacity magazine. Third, he argues that his statute of conviction, 18 U.S.C. § 922(g)(1), is facially unconstitutional because it violates his Second Amendment rights and is an unconstitutional extension of Congress's power under the Commerce Clause. Both parties agree that Bell's third argument is foreclosed.[1]

Bell contends that it was error to deny him an offense-level adjustment under U.S.S.G. § 3E1.1 because the altercation with Brito does not negate his demonstrated acceptance of responsibility.

Both parties agree that Bell properly preserved this issue for appeal. Accordingly, "[w]e review the district court's legal interpretation of the Sentencing Guidelines *de novo* and factual findings for clear error." *United States v. Castillo*, 779 F.3d 318, 321 (5th Cir. 2015). "A factual finding is clearly erroneous only if, based on the entirety of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been

---

[1] We agree. Because Bell raises this argument for the first time on appeal, we review it for plain error. *United States v. Hildreth*, 108 F.4th 912, 919 (5th Cir. 2024). We have previously rejected preserved Second Amendment and Commerce Clause challenges to § 922(g)(1). *United States v. Diaz*, 116 F.4th 458, 471–72 (5th Cir. 2024) (rejecting Second Amendment challenge to § 922(g)(1)); *United States v. Perryman*, 965 F.3d 424, 426 (5th Cir. 2020) (rejecting Commerce Clause challenge to § 922(g)(1)). Accordingly, Bell cannot show plain error.

made." *United States v. Diaz*, 90 F.4th 335, 344 (5th Cir. 2024) (quoting *United States v. Brooks*, 681 F.3d 678, 712 (5th Cir. 2012)).

The entry of a guilty plea prior to trial "combined with truthfully admitting the conduct comprising the offense" constitutes "significant evidence of acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.3; *see also United States v. Hinojosa-Almance*, 977 F.3d 407, 410 (5th Cir. 2020). However, such evidence "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.3.

The Guidelines provide a non-exhaustive list of factors that sentencing courts may use to determine whether to award the adjustment, including:  (1) "truthfully admitting the conduct"; (2) "voluntary termination or withdrawal from criminal conduct or associations"; and (3) the "timeliness" of acceptance of responsibility. *Id.* cmt. n.1.  In this case, the district court concluded that Bell's pre-sentencing altercation with Brito was "a sign that [Bell] has failed to withdraw from criminal conduct."

Although cases are legion applying the "criminal conduct" factor, the Guidelines do not define that phrase, and there is little guidance on what qualifies as "criminal."  Nevertheless, "[n]ot every incident of wrongful conduct" pre-sentencing "is a reflection of an individual's failure to demonstrate acceptance of responsibility as that term is defined in § 3E1.1." *United States v. Cooper*, 998 F.3d 806, 812 (8th Cir. 2021) (Kelly, J., concurring); *see also id.* at 812–13 (citing cases awarding § 3E1.1 reductions to defendants who participated in pre-sentencing altercations).  Courts may consider the "seriousness" of the defendant's wrongful conduct under this factor to determine whether it outweighs evidence of acceptance of responsibility. *See id.* at 813.

Bell's PSR, which the district court adopted, reveals that Bell admitted his involvement in the § 922(g)(1) offense and accepted responsibility for his actions. This constitutes "significant evidence" of Bell's acceptance of responsibility. U.S.S.G. § 3E1.1 cmt. n.3.

Bell's pre-sentencing altercation does not negate this significant evidence. As the video shows, Bell asked Brito to stop snoring and then returned to his bunk, revealing that Bell harbored no violent intentions. Brito then arose, spoke across the cell to Bell, and descended from his bunk, advancing towards Bell. Brito later punched Bell in the face, escalating the encounter. After Bell grabbed a broom, Brito hit Bell in the head with a water cooler. Bell struck at Brito only once, during the final seconds of the encounter before detention officers ended the altercation. Following the incident, Bell was never disciplined by prison authorities or criminally charged.

An inmate who asks his cellmate to stop snoring can hardly be described as an "aggressor" of criminal conduct when the cellmate later escalates the encounter to physical violence. Indeed, Bell's conduct is a far cry from that of other defendants who initiated or participated in "assaults" and other violent criminal conduct in the cases in which we and other circuit courts have affirmed the denial of a § 3E1.1 adjustment. *See, e.g.*, *United States v. Mendez-Becerra*, 745 F. App'x 240, 240–41 (5th Cir. 2018) (affirming denial of acceptance of responsibility where defendant "assault[ed] two fellow inmates in a gang-related altercation"); *United States v. Arteaga-Rios*, 762 F. App'x 177, 177–78 (5th Cir. 2019) (same where defendant "participated in an assault on other inmates"); *United States v. Finnesy*, 953 F.3d 675, 702 (10th Cir. 2020) (same where defendant struck "the first blow" on a fellow inmate and used a "shank"); *United States v. Sellers*, 595 F.3d 791, 792 (7th Cir. 2010) (same for a "violent, unprovoked" attack during a card game in which the defendant "repeatedly punched the other

prisoner, attempted to slam his body on the ground, and chased him down even as the victim tried to retreat"); *United States v. Prince*, 204 F.3d 1021, 1023 (10th Cir. 2000) (same where defendant "stabbed a fellow prisoner").

Further, Bell's decision to return force appears to have been made in self-defense, which would negate the criminality of his conduct. *See United States v. Santiago*, 96 F.4th 834, 849 (5th Cir. 2024). In *Santiago*, for example, we held that the district court clearly erred when it applied a murder cross reference pursuant to U.S.S.G. § 2K2.1(c) without considering self-defense. *Id.* at 850. A video of the encounter revealed that the defendant's reaction "very well might have been self-defense" because his assailants tried to rob him with guns drawn. *Id.* We explained that self-defense would "negate[] the elements of criminal behavior" and render the cross reference improper. *Id.* at 849–50 (alteration adopted) (citation omitted). The same can be said here, where Bell returned to his bunk at the beginning of the video, only punched Brito after Brito struck him twice, and was being held a cell with a handful of other prisoners, whose allegiance in the dispute was unknown, and officers had not yet arrived to end the encounter.

Because Bell did not initiate violence and appears to have acted in self-defense, his conduct does not outweigh the "significant evidence" of his acceptance of responsibility. Accordingly, the district court erred in denying Bell an acceptance-of-responsibility adjustment pursuant to U.S.S.G. § 3E1.1.

\* \* \*

We therefore VACATE Bell's sentence, and REMAND for resentencing. Because we vacate Bell's sentence on this basis, we do not address Bell's remaining challenge to the district court's sentence regarding

No. 23-50755

the application of the elevated base offense level pursuant to § 2K2.1(a)(1).[2] *See United States v. Broussard*, 669 F.3d 537, 555 (5th Cir. 2012).

_____

[2] We note only that the standards contained in *United States v. Luna-Gonzalez*, 34 F.4th 479 (5th Cir. 2022), constitute the law of this circuit on U.S.S.G. § 2K2.1. Under *Luna-Gonzalez*, the government bears the burden to show that the magazine and firearm are "compatible." *Id.* at 480. In other words, they must "actually fit." *Id.* at 481.